IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| BILL PRIM, in his official capacity ) <br> as Sheriff of McHenry County, Illinois, ) <br> BRIAN E. VANVICKLE in his official ) <br> capacity as Sheriff of Ogle County, Illinois, ) <br> DAVID SNYDERS, in his official capacity ) <br> as Sheriff of Stephenson County, Illinois, ) <br> MIKE DOWNEY, in his official capacity ) <br> Sheriff of Kankakee County, ) <br> ) <br> v. ) <br> ) <br> KWAME RAOUL, in his capacity as the ) <br> Illinois Attorney General ) <br> ) <br> Defendants. ) | Civil Action No. 20 CV 50094 |

## COMPLAINT FOR INJUNCTIVE RELIEF
## AND DECLARATORY JUDGMENT

For their Complaint for Declaratory Judgment and Injunctive Relief, Plaintiffs Bill Prim, Brian E. VanVickle, David Snyders, and Mike Downey show the Court as follows.

## PARTIES

1. Plaintiff Bill Prim is the duly elected sheriff of McHenry County, Illinois. He brings this suit in his official capacity as sheriff.

2. Plaintiff Brian E. VanVickle is the duly elected sheriff of Ogle County, Illinois. He brings this suit in his official capacity as sheriff.

3. Plaintiff David Snyders is the duly elected sheriff of Stephenson County, Illinois. He brings this suit in his official capacity as sheriff.

4. Plaintiff Mike Downey is the duly elected sheriff of Kankakee County, Illinois. He brings this suit in his official capacity as sheriff.

1

5. Defendant Kwame Raoul is the duly elected Attorney General of the State of Illinois.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 2201 in that the Complaint asserts claims arising under the Constitution and laws of the United States and seeks a declaration of rights and other legal relations under the Constitution and laws of the United States.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant is located within this district and because a substantial part of the events giving rise to the claims asserted in the Complaint occurred in this district.

## FACTS APPLICABLE TO ALL CLAIMS

**The Sheriffs**

8. The Plaintiffs are four Illinois sheriffs (the "Sheriffs") tasked with identifying the perpetrators of crime, arresting these criminals, and detaining them in county jails.

9. Each of the Sheriffs has the duty to oversee, manage, and maintain the jails in their jurisdiction.

10. From time-to-time, these jails house individuals who are undocumented aliens.

**Federal Immigration Regulation**

11. The federal government regulates immigration under both the federal constitution and Congressional statutes. It enforces the immigration laws through Executive Branch agencies, including the Departments of Justice and Homeland Security ("DHS").

12. DHS includes the component agencies U.S. Immigration and Customs Enforcement ("ICE") and U.S. Customs and Border Protection ("CBP").

13. The federal government has "broad, undoubted" power to regulate matters pertaining to immigration and the status of aliens. *Arizona v. United States,* 567 U.S. 387, 394 (2012).

14. The Constitution affords Congress the power to "establish a uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, and to "regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, and affords the President of the United States the authority to "take Care that the Laws be faithfully executed," U.S. Const. art. II,§ 3.

15. Based on its enumerated powers and its constitutional power as a sovereign to control and conduct relations with foreign nations, the federal government alone has the authority to establish immigration laws, the execution of which the States cannot obstruct or discriminate against.

16. Congress has exercised its authority to make laws governing the admission, presence, status, and removal of aliens within the United States by enacting various provisions of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.,* the Immigration Reform and Control Act of 1986 ("IRCA"), Pub. L. No. 99-603, 100 Stat. 3359, codified at 8 U.S.C. § 1324a, *et seq.,* and other laws regulating immigration.

17. These laws codify the Executive Branch's authority to inspect, investigate, arrest, detain, and remove aliens who are suspected of being, or found to be, removable from the United States under the immigration laws. *See* 8 U.S.C. §§ 1182, 1225, 1226, 1227, 1228, 1231, 1357.

18. Congress also has codified basic principles of cooperation and comity between state and local authorities and the United States. For example, the federal government allows states to assume custody over removable aliens who have been convicted of state or local offenses. *See id.* § 1231(a)(4)(A).

19. Federal law generally contemplates that such aliens will serve their state or local criminal sentences before being subject to removal, but then will be taken into federal custody upon the expiration of their state prison terms. *See id.* §§ 1226(c), 1231(a)(l)(B)(iii), (a)(4).

20. "Consultation between federal and state officials is an important feature of the immigration system." *Arizona,* 567 U.S. at 411. Congress therefore has directed that a federal, state, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, DHS "information regarding the citizenship or immigration status ... of an individual." 8 U.S.C. § 1373(a); *see id.* § 1644 (same); *see also id.*§ 1357(g)(10)(A) (providing for state and local "communicat[ion] with [DHS] regarding the immigration status of any individual, including reporting knowledge that a particular alien is not lawfully present in the United States").

21. Congress also expressly authorized states and localities "to cooperate with the [Secretary] in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States." *Id.*§ 1357(g)(10)(B).

**Federal Detainers**

22. One aspect of federal immigration law allows federal immigration officials to issue "detainers" that require local law enforcement officers like the Sheriffs to maintain custody of undocumented aliens for up to 48 hours. *See* 8 U.S.C. § 1357; 8 C.F.R. § 287.7.

23. One type of detainer allows the federal immigration officers to require state and local law enforcement officers to hold undocumented aliens who have committed "violation[s] of controlled substances laws[.]" 8 U.S.C. § 1357(d).

24. Another type of detainer provides that state or local law enforcement officers "shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." 8 C.F.R. § 287.7.

25. By using the term "shall," the regulation incorporates mandatory language that requires compliance with a detainer issued against an undocumented alien.

26. This language requires Illinois law enforcement officers to comply with an immigration detainer they receive from those federal officers tasked with carrying out national immigration policy.

27. Immigration detainers notify law enforcement officials that DHS has found probable cause that the person subject to the request is a removable alien.

28. They then request that law enforcement officials:

   a. notify the relevant DHS component at least 48 hours before the alien is released from state/local custody;

   b. maintain custody of the individual for a period not to exceed 48 hours beyond the time at which he is expected to be released from custody to allow DHS the opportunity to assume custody;

   c. serve the alien with a copy of the detainer;

   d. relay the detainer to any other law enforcement agency to whom the alien is transferred; and

   e. notify DHS in the event of the alien's death, hospitalization, or transfer.

**The Trust Act**

29. In August of 2017, Illinois enacted a statute styled as the "Illinois Trust Act" that purports to restrict the ability of Illinois law enforcement officers to respond to the immigration detainers properly issued by federal immigration officers.

30. The Trust Act purports to bar any law enforcement agency or official from detaining "any individual solely on the basis of any immigration detainer or non-judicial immigration warrant or otherwise comply with an immigration detainer or non-judicial immigration warrant." 5 ILCS 805/15.

31. The Trust Act also provides that no law enforcement officer may "stop, arrest, search, detain, or continue to detain a person solely based on an individual's citizenship or immigration status." *Id*.

32. By this plain language, the Trust Act prevents Illinois law enforcement officers from complying with a federal immigration detainer. *Id*.

33. If carried out, the Trust Act would prohibit Illinois law enforcement officers from carrying out the requirements of an "immigration detainer." 5 ILCS 805/15.

34. That restriction places the Trust Act in direct conflict with the federal detainer rules.

35. The Trust Act is in direct conflict with federal laws requiring cooperation between federal and state law enforcement officials.

**Federal Supremacy Over Immigration Law**

36. The Supremacy Clause of the Constitution states that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

37. A state enactment is invalid if it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941), or if it "discriminate[s] against the United States or those with whom it deals," *South Carolina v. Baker,* 485 U.S. 505, 523 (1988).

38. When a state statute conflicts with a federal requirement, the Supremacy Clause of the federal constitution compels the state law to stand aside. *See* U.S. Cons. Art. VI, Cl. 2.

39. A federal law preempts a state law and prevents the state law from having any effect when compliance with both federal and state regulations is impossible.

40. Preemption also applies where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.

41. The preemption doctrine applies with particular force in immigration matters because the federal government has broad, exclusive regulatory power over immigration and the status of aliens.

42. The Supremacy Clause does not allow Illinois to obstruct the enforcement of federal laws that Congress has enacted under its constitutional authority to regulate immigration.

43. The Supremacy Clause does not allow Illinois to discriminate against federal officials as they carry out their duties.

44. The U.S Supreme Court has instructed that state governments and local officials may not achieve their own immigration policy.

45. Congress and federal immigration officials have analyzed the appropriate enforcement mechanisms for enforcing the nation's immigration laws. In striking the balance of competing needs, they have determined that immigration detainers are a necessary and useful tool to enforcing federal immigration laws.

46. The Trust Act directly contradicts the express federal requirements for detainers.

47. The Trust Act has both the purpose and effect of obstructing federal immigration enforcement in Illinois.

48. The Trust Act violates the Supremacy Clause by obstructing federal immigration operations and discriminating against federal immigration authorities.

49. The Trust Act impermissibly prohibits or restricts basic cooperation with federal officials and discriminates against federal immigration authorities.

50. Federal law contemplates that removable aliens who violate state law will be taken into state custody and complete their state sentences before being detained by the United States and that federal immigration detention for immigration proceedings or for removal will begin upon such an alien's release from state custody. 8 U.S.C. § 1226(c); § 1231(a)(4).

51. Because it undermines and frustrates the federal government's exclusive power to regulate immigration, the Trust Act is preempted by federal law.

**Conflict Faced By Illinois Sheriffs**

52. The Trust Act puts Illinois law enforcement officers in an impossible position by forcing them to choose between obeying federal immigration detainers or complying with the state statute.

53. The Supremacy Clause requires that this conflict between the two bodies of law be resolved in favor of federal law.

54. The Trust Act is therefore preempted by federal law governing immigration detainers.

55. However, the Sheriffs continue to face the threat of litigation and other attempts to enforce the Trust Act.

56. For instance, Sheriff VanVickle is the defendant in a lawsuit filed in Illinois state court claiming that he violated the Trust Act by complying with a federal immigration detainer.

57. Sheriff Snyders is similarly a defendant to a lawsuit filed in Illinois state court claiming that he also violated the Trust Act by complying with a federal immigration detainer.

58. Sheriff Prim has previously been subject to litigation under the Trust Act.

59. The threat of litigation over the Trust Act has become acute because the Department of Justice has recently brought challenges to state and local efforts to limit law enforcement interaction with federal immigration law enforcement.

60. These lawsuits challenge the efforts of New Jersey, California, and King County, Washington to inhibit local law enforcement.

61. The lawsuits contend that the state and local efforts are preempted by the federal government's exclusive prerogative to regulate immigration and that efforts to curtail the exchange of information between state and federal law enforcement unlawfully intrude on federal immigration enforcement efforts.

62. The New Jersey lawsuit directly challenges a New Jersey law that prevents the state's law enforcement officers from complying with immigration detainers by informing federal immigration officials about the release of offenders who are undocumented aliens subject to enforcement by federal authorities.

63. These lawsuits remain pending and reflect the threat of similar action by the Department of Justice posed by the Trust Act.

64. The Sheriffs have a legitimate basis to believe the Department of Justice will bring similar challenges in other states, including in Illinois and against the Trust Act.

**The Defendant**

65. The Defendant is the duly elected Attorney General for the State of Illinois.

66. In that capacity, the Defendant is charged with enforcing the laws of the State of Illinois.

67. In that role, the Defendant is charged with ensuring compliance with the Trust Act as part of his duties.

68. The Defendant's office also brought federal litigation related to the Trust Act by suing Attorney General William Barr in a lawsuit concerning the Trust Act's impact on the federal grant funding.

69. The Defendant's office brought this action in this Court under the caption *Illinois v. Barr*, Cause No. 1:19-cv-03461.

70. The Defendant and his predecessors have also issued guidance documents explicitly instructing local law enforcement officers like the Sheriffs to comply with the Trust Act.

### COUNT I – PRELIMINARY AND PERMANENT INJUNCTION

71. The Sheriffs incorporate Paragraphs 1 through 70 as if fully stated herein.

72. The Sheriffs face irreparable harm in the form of ongoing litigation and threats of enforcement of the Trust Act.

73. The enforcement of an unconstitutional law creates per se irreparable harm.

74. Public policy favors the entry of an injunction preventing the enforcement of the Trust Act.

75. The Sheriffs have no adequate remedy at law.

76. The Sheriffs are entitled to a preliminary and permanent injunction against the enforcement of the Trust Act.

## COUNT II – DECLARATORY JUDGMENT

77. The Sheriffs incorporate Paragraphs 1 through 76 as if fully stated herein.

78. Pursuant to 28 U.S.C. § 2201, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

79. The Sheriffs face continuing threat of litigation about and enforcement of the Trust Act unless and until the Court declares it unconstitutional as preempted by federal law.

80. The Sheriffs respectfully request that the Court enter a declaratory judgment determining that the Trust Act is preempted by federal law.

WHEREFORE, the Sheriffs respectfully requests the Court to enter a judgment:

(a) declaring that the Trust Act is invalid and unenforceable because it is preempted by federal law;

(b) enjoining Defendant on a preliminary and permanent basis from enforcing or threatening to enforce the Trust Act;

(c) awarding Plaintiffs their reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988(b); and

(d) granting such other and further relief as the Court may deem equitable and just.

Dated: March 9, 2020

By: ___/s/ Dana Amato Sarros___

Dana Amato Sarros (#6326542)
**BARNES & THORNBURG LLP**
1 N. Wacker Drive, Suite 4400
Chicago, Illinois 60606
(312) 357-1313
dana.sarros@btlaw.com

Mark Crandley (*pro hac vice pending*)
**BARNES & THORNBURG LLP**

11

11 S. Meridian St.
Indianapolis, Indiana 46204
(317) 236-1313
Mark.Crandley@btlaw.com

Case: 3:20-cv-50094 Document #: 1 Filed: 03/09/20 Page 12 of 12 PageID #:12